**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SCOTTSDALE INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  13 CV 06392 |
| | ) | |
| VILLAGE OF DIXMOOR, JOSEPH FALICA, JR. | ) | |
| MICHAEL R. MORGAN, NICHOLAS GRAVES, | ) | Hon. James B. Zagel |
| TASSO J. KACHIROUBAS, JOHN MEDUGA, | ) | |
| WILLIE DAVIS, JAMES KIZART, JONATHAN | ) | |
| BARR, ROBERT TAYLOR, JAMES HARDEN, | ) | |
| ROBERT VEAL, SHAINNE SHARP, | ) | |
| | ) | |
| Defendants. | ) | |

**DIXMOOR INSUREDS' MOTION TO DISMISS COUNTS III TO VIII OF SCOTTSDALE'S
COMPLAINT FOR DECLARATORY JUDGMENT, PURSUANT TO FED.R.CIV.P. 12(b)(6)[1]**

Defendants, the Village of Dixmoor ("Dixmoor" or the "Village"), an Illinois municipality,

Joseph Falica, Jr. and Michael R. Morgan (collectively referred to as the "Dixmoor Insureds")[2] by

their attorneys, Paulette A. Petretti and Darcee C. Williams of Scariano, Himes & Petrarca, Chtd.,

hereby move to dismiss Counts III through VIII of Plaintiff, Scottsdale Insurance Company's

("Scottsdale") Complaint for Declaratory Judgment ("Complaint"), pursuant to Fed.R.Civ.P.

12(b)(6).  In support of this Motion, the Dixmoor Insureds state as follows:

## I.   INTRODUCTION

1.     On September 6, 2013, Scottsdale filed its Complaint for Declaratory Judgment.

Scottsdale Complaint, Doc. Nos. 1 to 5-10, Page ID #1-643.

2.     In its Complaint, Scottsdale seeks a declaration that it owes no obligation

under the subject insurance policies to defend or indemnify the Village of Dixmoor, and

---

[1] Concurrent with the filing of this Motion, the Dixmoor Insureds are filing their Answer and Affirmative Defenses
to Counts I, II, and IX.
[2] Nicholas Graves, who was a former Dixmoor police chief, passed away a number of years ago.  In that he is
deceased, the undersigned attorneys have not appeared on his behalf.

certain of its current and former police officers – Joseph Falica, Jr. Michael R. Morgan and Nicholas Graves[3] - with respect to claims asserted in civil rights lawsuits pending in the U.S. District Court for the Northern District of Illinois titled: *Jonathan Barr v. Illinois State Police Officers Tasso J. Kachiroubas, et al.,* Case No. 12 CV 08327; *Robert Taylor v. Illinois State Police Officers Tasso J. Kachiroubas, et al.,* Case No. 12 CV 08321; *Robert Veal v. Illinois State Police Officers Tasso J. Kachiroubas, et al.,* Case No. 12 CV 08342; *James Harden v. Illinois State Police Officers Tasso J. Kachiroubas, et al.,* Case No. 12 CV 08316; and *Shainne Sharp v. Illinois State Police Officers Tasso J. Kachiroubas, et al.,* Case No. 12 CV 08349 ("Underlying Lawsuits").

## II.    STANDARD OF REVIEW

3.      In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. l991).

4.      Although courts must accept all well-pleaded facts, courts need not ignore facts set forth in the complaint that undermine the plaintiff's claims and need not give weight to unsupported conclusions of law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009).

5.      In order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High School*, 144 F.3d 448, 454-55 (7th

---

[3] As previously noted, this motion is not submitted on behalf of Nicholas Graves, who is deceased.

Cir.1998); *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992).

### III.     CHOICE OF LAW

6.     Jurisdiction in this case is based on diversity.  Therefore this Court will consult

the choice of law rules of Illinois to determine which state's substantive law should apply.

*Auto-Owners Insurance Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009).

7.     In contract cases, Illinois, the forum state, applies the most significant contacts

test.  In insurance coverage cases, Illinois considers a variety of factors, including the domicile

of the insured, the place of delivery of the policy and the place of performance, with the most

important consideration being the location of the insured risk. *Id.*

8.     Here, the insured Village is located in Illinois and all acts related to the issues in

controversy took place in Illinois.  Therefore, the substantive law of Illinois should apply.  *Id.*

### IV.     UNDERLYING LAWSUITS

9.     The Underlying  Lawsuits were filed on or about September 9, 2013, copies of

which are attached to Scottsdale's Complaint, Docs. 5-9, 5-10, Page ID #507 – 643.

10.     In the Underlying Lawsuits, by Scottsdale's own admission, the plaintiffs all

allege that the wrongful conduct at issue was initiated by detention and improper interrogation

in October 1992, a date falling within Scottsdale's policy periods.  Scottsdale Complaint, Doc.

1, ¶30a.-e, Page ID #6-7.

### V.     SCOTTSDALE POLICIES

11.     In its Complaint for Declaratory Judgment, Scottsdale alleges it issued policies

to the Village, which are attached to its Complaint, including law enforcement liability policies

that contain duty to defend provisions ("LEL" policies):  (1) Policy No. PPL-IL-1200, effective

annually from October 1, 1991 to October 1, 1992; Scottsdale Complaint, Doc. 4, Page ID #18;

and (2) Policy No. PP-IL-1300, effective annually from October 1, 1992 to October 1, 1993;

Scottsdale Complaint, Doc. 4, Page ID #28.

       12.    Scottsdale also issued the following Public Entity Policies to Dixmoor ("Public Entity

Policies"), which include law enforcement liability coverage:

       a.    Policy No. PES0004525, effective for the time period from October 1, 2004 to October 1, 2005, providing LEL coverage, including a duty to defend;

       b.    Policy No. PES0004693, in effect from October 1, 2005 to October 1, 2006, providing LEL coverage, including a duty to defend; and

       c.    Policy No. PES0004775, in effect from October 1, 2006 until its cancellation on April 25, 2007, providing LEL coverage, including a duty to defend.

Scottsdale Public Entity Policies, Doc. No. 5, Page ID #77-82; Doc No. 5-2, Page ID #179-184; Doc. No.

5-4, Page ID #283-288.

       13.    Scottsdale also issued the following Commercial Liability Umbrella Policies

("Umbrella Policies") to the Village of Dixmoor:

       a.    Umbrella Policy No. UMS0016592 effective October 1, 2004 to October 1, 2005. The umbrella policy has a limit of $9,000,000 for each occurrence and an aggregate limit of $9,000,000.

       b.    Umbrella Policy No. UMS0018599 effective October 1, 2005 to October 1, 2006. The umbrella policy has a limit of $9,000,000 for each occurrence and an aggregate limit of $9,000,000; and

       c.    Umbrella Policy No. UMS0020337 effective October 1, 2006 to April 25, 2007, when it was cancelled. The umbrella policy has a limit of $9,000,000 for each occurrence and an aggregate limit of $9,000,000.

Scottsdale Umbrella Policies, Doc. No. 5-6, Page ID #363-412; Doc. No. 5-7, Page ID #413-459; Doc.

No. 5-8, Page ID # 460-506.

       14.    With regard to the Underlying Lawsuits, in its Complaint, Scottsdale seeks

declarations that: the Scottsdale LEL Policies contain no duty to defend the Dixmoor Insureds

(Count I); the policies are not triggered (Count II); the claims and any damages awarded concern intentional acts and are therefore not covered under the policies (Count III); the claims and any damages concern acts committed by Village employees outside the scope of their duties, therefore no coverage exists for the individual law enforcement officer defendants (Count IV); the claims and any damages awarded result from injury which the Village or its officers intended or expected, therefore no coverage exists (Count V); the claims and damages arise from criminal, malicious, fraudulent or dishonest acts, therefore no coverage exists (Count VI); there is no coverage for any punitive or exemplary damages claimed (Count VII); there is no coverage for the Illinois State Police employees under Scottsdale's policies (Count VIII); and there is no coverage under the general liability coverage or the public officials sections of Scottsdale's Public Entity policies (Count IX); Scottsdale Complaint, Doc. 1, Page ID # 1-13.

## VI. <u>CERTAIN CLAIMS DEFICIENT AS A MATTER OF LAW</u>

### A. Counts III through VIII Fail to State Viable Claims Before this Court

15.    In Counts III through VIII of its Complaint, Scottsdale alleges the Underlying Plaintiffs' claims and any damages awarded in the Underlying Lawsuits are not covered under Scottsdale's policies because they relate to intentional acts; are outside the scope of officers' employment duties; concern conduct of defendants not related to the Dixmoor Insureds; result from intended or expected injuries; and/or are criminal, malicious or fraudulent. Further, Scottsdale disclaims coverage for any punitive or exemplary damages claimed in the Underlying Lawsuits.  Scottsdale Complaint, Doc. 1, Page ID # 1-13.

16.    Scottsdale's declaratory requests are not properly before this Court.  Initially, as discussed herein, Scottsdale's LEL policies and LEL provisions are expressly designed to afford coverage for law enforcement activities, such as arrest, detention and malicious

5

prosecution, all of which are intentional acts. Hence, the purported "exclusions" on which Scottsdale attempts to build its denials are not included in the terms of the policies and, in fact, are expressly contradicted by the policies' insuring agreements. Even if the purported "exclusions" were included in Scottsdale's policies, in order for this Court to determine application of such "exclusions" prior to the resolution of underlying tort action, this Court would have to determine ultimate facts upon which recovery is predicated in the Underlying Lawsuits. Such determinations would be improperly invasive of the underlying court's jurisdiction.

17.     In Illinois, it is black letter law that trial courts do not have the authority or the discretion to make declarations concerning coverage based on undecided issues of ultimate facts upon which recovery may be predicated in the underlying lawsuit. *Maryland Casualty Company v. Peppers*, 64 Ill.2d 187, 197, 355 N.E.2d 24, 30 (1976).

18.     In *Peppers*, the Illinois Supreme Court found that the trial court had abused its discretion when the trial court found that the defendant in the underlying case had intentionally caused injury to the plaintiff. *Id*., 64 Ill.2d at 196, 355 N.E.2d at 29-30. The Illinois Supreme Court found that the trial court's ruling was not proper in a declaratory judgment action because this ultimate issue of fact had not been decided in the underlying case. Hence, the declaratory judgment rulings were deemed premature and had to be reversed. *Id*., 64 Ill.2d at 197, 355 N.E.2d at 30.

19.     Similarly, in *Thornton v. Paul*, 74 Ill. 2d 132, 159, 384 N.E.2d 335, 347 (1979), the Illinois Supreme Court ruled that it would not be proper for an insurer to seek a declaratory judgment that the insured's conduct constituted a battery and was, therefore, beyond the coverage of the policy because these issues of fact must be dictated by the primary litigation

6

and not an ancillary proceeding, such as a declaratory judgment. Id., 74 Ill.2d at 159, 384

N.E.2d at 346 (overruled on other grounds by *American Family Mutual Insurance Company v.*

*Savickas*, 193 Ill. 2d 378, 387, 739 N.E.2d 445, 450-451 (2000)).

20.     The Illinois Supreme Court continues to uphold the rule that it is inappropriate to

resolve a declaratory judgment action in such a manner as would bind the parties in the

underlying litigation on any issues therein. *American Family*, 193 Ill. 2d at 387, 739 N.E.2d at

450-451.

21.     Both *Peppers* and *Thornton* lay out instructions concerning what issues cannot

be determined in a declaratory judgment action prior to the completion of the underlying action.

An ultimate fact upon which recovery is predicated in the underlying case may not be

addressed.  An ultimate fact is one that bears upon an issue crucial to the insured's liability in

the underlying case.  Such matters cannot be litigated in a declaratory judgment action before

completion of the underlying lawsuit.  *Fidelity & Casualty Company of New York v.*

*Envirodyne Engineers, Inc.*, 122 Ill. App. 3d 301, 307, 461 N.E.2d 471, 475 (1st Dist. 1984).

Counts III to VIII all are dependent on determinations of ultimate facts.  In accordance with

Illinois law, such determinations must be left for resolution in the Underlying Lawsuits.

Therefore, Counts III through VIII should be dismissed.

**B.      Count III, Seeking Determination of Intentional Conduct, Not Proper**

22.     In Count III, Scottsdale alleges, "The allegations in the underlying lawsuits

allege intentional acts undertaken with the intent to cause harm and are therefore not covered by

any of the Scottsdale policies."  Scottsdale Complaint, Doc. 1, ¶ 38, Page ID #9.  A review of

the Underlying Complaints reveals allegations of arrest, detention, imprisonment, malicious

prosecution, and intentional infliction of emotional distress.  Indeed, these are all purported

"intentional" acts, but they are precisely the types of alleged claims that are expressly covered by Scottsdale's LEL Policies and LEL provisions. Scottsdale Policies, attached to Scottsdale Complaint, Doc. 4, Page ID # 19, #31; Doc. 5, Page ID # 81-82; Doc. 5-2, Page ID # 183-184; Doc. 5-4, Page ID # 287-288.

23.     As discussed by the Illinois Supreme Court in *Peppers*, a declaration by a trial court that injury in an underlying case was caused by an intentional act is an abuse of discretion. *Peppers*, 64 Ill. 2d at 196, 355 N.E.2d at 29-30.

24.     Any determination of whether alleged "intentional" acts should be excluded from coverage under Scottsdale's policies is not an appropriate coverage opinion while the Underlying Complaints are ongoing. *Landmark American Insurance Company v. NIP Group, Inc.*, 2011 WL 6117097 at *15 (1st Dist. Ill., Dec. 5, 2011).

25.     Significantly, any declaration that "intentional" acts are not covered is contrary to the Scottsdale policy language, which affords the Dixmoor Insureds coverage for the precise "intentional" acts that are alleged. Indeed, in the Duty to Defend Provision on the first page of each policy, Scottsdale promises "a duty to defend any suit against the INSURED seeking damages on account of such PERSONAL INJURY, BODILY INJURY, or PROPERTY DAMAGE, even if any of the allegations are groundless, false or fraudulent. Scottsdale Policies, attached to Scottsdale Complaint, Doc. 4, Page ID # 18, #30; Doc 5, page ID #77, Doc. 5-2, Page ID #179; Doc. 5-4, Page ID # 283.

26.     In light of governing law, there is no case or controversy regarding "intentional acts" that is ripe for coverage consideration. Accordingly, Count III of Scottsdale's Amended Complaint should be dismissed.

**C.      Count IV, Seeking Denial Based on Scope of Employment, Not Proper**

27.      Count IV of Scottsdale's Complaint alleges, "The allegations in the underlying lawsuits concern acts committed by alleged Village employees, Joseph Falica, Jr., Michael R. Morgan and Nicholas Graves, outside the scope of their duties as employees, and, therefore, no coverage exists for Joseph Falica, Jr., Michael R. Morgan and Nicholas Graves."   Scottsdale Complaint, Doc. 1, ¶ 33, Page ID #9.

28.       In fact, the Underlying Lawsuits allege that the individual Dixmoor Insureds were acting within the scope of their employment.  Scottsdale Complaint, Doc. 5-9 Page ID #536, #562, Doc. 5-10, # 592,  #611 and #641.

29.      Significantly, the Scottsdale LEL Policies provide:

> The Company will pay on behalf of the INSURED all sums which the INSURED shall become legally obligated to pay as damages because of WRONGFUL ACT(S) which result in:
> (A) PERSONAL INJURY
> (B) BODILY INJURY
> (C) PROPERTY DAMAGE
> caused by an OCCURRENCE and arising out of the performance of the INSURED'S duties to provide law enforcement and/or other departmentally approved activities…

Scottsdale Policies, Insuring Agreement. Scottsdale Complaint, Doc 4, Page ID #18, #30; see also, Doc. 5, Page ID #77; Doc 5-2, Page ID #179; Doc. 5-4, Page ID #283.

30.      In the Scottsdale LEL policies, "personal injury" means, among other things, assault and battery, false arrest, detention or imprisonment, malicious prosecution, defamation, humiliation or mental distress, and violations of civil rights under federal or state law.  See, Scottsdale Policies, Definitions. Scottsdale Complaint, Doc. 4, Page ID #10, #31; Doc. 5, Page ID #81-82; Doc. 5-2, Page ID #183-184; Doc. 5-4; Page ID #287-288.  All of these purported

"personal injuries" are alleged by the Underlying Plaintiffs to have been sustained as a result of wrongful acts undertaken in the scope of employment.  Hence, these alleged claims are subject to coverage under Scottsdale's policies.

31.     Indeed, LEL policies are precisely designed to cover the types of claims the Underlying Plaintiffs raise.   The premiums paid for the Scottsdale's policies were in consideration for LEL coverage.  Coverage has been promised for claims of liability against the Village and individual employees, such as Falica and Morgan, occurring during the course of law enforcement activities undertaken in the scope of employment.  Based on the face of the pleadings, the Scottsdale policies trigger coverage for the Dixmoor Insureds for the Underlying Lawsuits.

32.     A declaratory judgment action is not intended to permit hypothetical cases to be brought before the court to enable parties to secure advisory opinions or legal advice from the court with regard to future controversies.   *Weber v. St. Paul Fire & Marine Insurance Company*, 251 Ill. App. 3d 371, 373, 622 N.E.2d 66, 68 (3d Dist. 1993).

33.     Here, there are no allegations that the Dixmoor Insureds were acting outside the scope of their duties.  Indeed, the employees are alleged to have been acting within the scope of their duties.  Scottsdale Complaint, Doc. 5-9 Page ID #536, #562, Doc. 5-10, # 592,  #611 and #641.   It would be pure speculation to predict that the question of "scope of duties" will even be a matter in dispute.   There is no current case or controversy concerning scope of employment.

34.     To the extent "scope of duties" ever becomes an issue, it will be a question of fact to be determined in the Underlying Lawsuits.  *Steambridge Builders, Inc., v. Industrial Commission*, 263 Ill. App. 3d 878, 883, 636 N.E.2d 1088, 1092 (2nd Dist. 1994).  Accordingly,

10

Count IV should be dismissed.

**D.    Count V, Seeking Determination of Intended or Expected Injury, Not Proper**

35.    Count V of Scottsdale's Complaint alleges, "The allegations in the underlying complaints contend that the Village and/or its officers intended, expected, or reasonably could have expected the injury alleged; therefore, no coverage exists." Scottsdale Complaint, Doc. 1, ¶ 42, Page ID #10.

36.    As discussed above, law enforcement activities such as arrest, detention and prosecution are all inherently intentional actions, with the expected result that if charges are proven, an accused will be convicted and sent to prison. Notably, these "expected" events are specifically covered by Scottsdale policies. In fact, Scottsdale has not cited to any exclusion for "intended" or "expected" injuries in the Scottsdale LEL Policies because there are no such exclusions. Moreover, even if there were such exclusions, there has been no determination that any damages have been awarded in the Underlying Lawsuits that resulted from purported injury, which the Village or its officers intended or expected.

37.    Clearly, Scottsdale's invocation of an non-existent exclusion is devoid of any basis or foundation. Accordingly, Count V of Scottsdale's Complaint should be dismissed.

**E.    Count VI, Seeking Consideration of Existence of Criminal, Malicious, or Dishonest Acts, Not Proper**

38.    Count VI of Scottsdale's Complaint asserts, "There is no coverage under the Scottsdale policies for criminal, malicious, fraudulent, or dishonest acts…The allegations in the underlying complaints allege criminal, malicious, fraudulent, or dishonest acts for which no coverage exists." Scottsdale Complaint, Doc. 1, ¶¶ 44-45, Page ID #10.

39.     As a threshold matter, the Underlying Plaintiffs do not allege criminal acts against the Dixmoor Insureds.  They allege civil rights violations, which are covered under Scottsdale's LEL policies.  With regard to Scottsdale's assertions that malicious, fraudulent, or dishonest acts are not covered, the policy language directly contradicts such assertions.

40.     As discussed above, claims of wrongful acts related to arrest, detention, and malicious prosecution are expressly covered under Scottsdale's policies.   Moreover, Scottsdale's policies expressly promise to defend against "groundless, false and fraudulent acts."  Scottsdale Policies, Scottsdale Complaint, Doc. 4, Page ID #18, #30; Doc. 5, Page ID #77; Doc. 5-2, Page ID #179; Doc. 5-4, Page ID #283.   Therefore, merely because the Underlying Plaintiffs have alleged malicious, fraudulent or false actions, this does not bar coverage to the Dixmoor Insureds.  At this juncture, the Underlying Plaintiffs' assertions are simply allegations, not undisputed facts.  Scottsdale's request to foreclose the Dixmoor Insureds from coverage before any ultimate facts have been determined is contrary to the policy provisions.  Accordingly, Count VI of Scottsdale's Complaint should be dismissed.

**F.     Count VII, Seeking Consideration of Punitive Damages, Not Proper**

41.     Count VII of Scottsdale's Complaint asserts, "Any claim for punitive damages is uninsurable as a matter of public policy…Accordingly, there is no coverage under the Scottsdale policy for any punitive or exemplary damages claimed in the underlying lawsuit." Scottsdale Complaint, Doc. 1, ¶¶ 47-48, Page ID #11.

42.     Once again, Scottsdale's request is in direct contravention of promises set forth in Scottsdale's policies.  In the "Punitive or Exemplary Damage Exclusion" found at the back of each of Scottsdale's policies, Scottsdale expressly promises that:  "If a suit is brought against the INSURED for a claim falling within the coverage provided under the policy seeking both

12

compensatory and punitive or exemplary damages, then the Company will afford a defense to such action." Scottsdale Policies, Scottsdale Complaint, Doc. 4, Page ID #25, #35; Doc. 5-1, Page ID #115; Doc. 5-3, Page ID #220. The Underlying Complaints expressly request both compensatory and punitive damages. Scottsdale Complaint, Doc. 5-9, Page ID #537, #563; Doc. 5-10, Page ID #593, #612, #642. Hence, at this juncture Scottsdale must provide a defense against both compensatory and punitive damage claims.

43.     Similar to the foregoing arguments, merely because punitive damages are alleged does not lead to the conclusion that such allegation is warranted or will ever result in punitive liability.

44.     It is inappropriate for an ancillary court to issue declaratory judgments related to punitive damages before any such findings have been made in the underlying case. *Thornton*, 74 Ill. 2d at 159, 384 N.E.2d at 346.

45.     Furthermore, punitive damages may not be awarded against a municipal entity such as the Village of Dixmoor under the provisions of the Illinois Government and Governmental Tort Immunity Act. 745 ILCS 10/2-102. Accordingly, punitive damages are not relevant to the Village and cannot be grounds for denying coverage to the Village. Indeed, to the extent the Underlying Plaintiffs have made such a claim against the Village, it would be Scottsdale's obligation to defend the Village against such claims.

46.     Punitive damages have not been awarded or even determined to be available. Therefore, Count VII of Scottsdale's Complaint should be dismissed.

**G.     Count VIII Fails to State a Judiciable Case or Controversy**

47.     In Count VIII, Scottsdale asks this Court to deny coverage under its policies to

the Illinois State Police defendants. There are absolutely no grounds for such a coverage declaration request with regard to the Dixmoor Insureds. Scottsdale has not alleged, and cannot allege, that Dixmoor has tendered the Underlying Complaints to Scottsdale on behalf of the Illinois State Police defendants. Hence, Scottsdale has not alleged any judiciable case or controversy relating to coverage for the Illinois State Police defendants under the Scottsdale policies.

48.    Accordingly, in that Scottsdale has failed to satisfy the requirements of 28 U.S.C. §2201, Count VIII should be dismissed.

WHEREFORE Defendants, the Village of Dixmoor ("Dixmoor"), an Illinois municipality, Joseph Falica, Jr. and  Michael R. Morgan pray that this Court will dismiss Counts III through VIII of Scottsdale's Complaint for Declaratory Judgment and for any further relief this Court deems just and fair.

Respectfully submitted,


By:   s/ Paulette A. Petretti
        One of the Village of Dixmoor's Attorneys


PAULETTE A. PETRETTI (ARDC NO. 06203646)
DARCEE C. WILLIAMS (ARDC NO. 06276211)
SCARIANO, HIMES AND PETRARCA, CHTD.
Two Prudential Plaza - Suite 3100, 180 North Stetson
Chicago, Illinois 60601-6714
312-565-3100 ext. 245


g:\wp51\common\municipal\dixmoor\scottsdale\motions\motion to dismiss.docx

14